IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
No. 4:15-CV-00137-D

**Sonya Jones Cox,**

                Plaintiff,

v.

**Carolyn Colvin**, Acting Commissioner of Social Security,

                Defendant.

**Memorandum & Recommendation**

      Plaintiff Sonya Jones Cox instituted this action on August 24, 2015, to challenge the denial of her application for social security income. Cox claims that Administrative Law Judge Sara L. Alston erred in her determination by failing to properly consider Cox's mental impairments, failing to sufficiently support her finding that Cox was not fully credible, and failing to give full credit to all restrictions assessed in the medical opinions. Both Cox and Defendant Carolyn Colvin, the Acting Commissioner of Social Security, have filed motions seeking a judgment on the pleadings in their favor. D.E. 17, 19.

      After reviewing the parties' arguments, the court has determined that ALJ Alston erred in her ruling. There is substantial evidence to support the finding that Cox was not entirely credible and Cox failed to establish that ALJ Alston improperly considered the medical opinion evidence. However, ALJ Alston did not explain how her residual functional capacity ("RFC") assessment accounted for Cox's mild limitations in certain functional areas. Therefore, the undersigned magistrate judge recommends that the district court grant Cox's Motion for Judgment on the

Pleadings, deny Colvin's Motion for Judgment on the Pleadings, and remand the matter for further consideration.[1]

I. **Background**

On December 29, 2011, Cox filed applications for supplemental security income and disability insurance benefits. Both applications alleged a disability that began on September 18, 2011. After her claims were denied at both the initial stage and upon reconsideration, Cox appeared before ALJ Alston for a hearing to determine whether she was entitled to benefits. ALJ Alston determined Cox was not entitled to benefits because she was not disabled. Tr. at 19–30.

ALJ Alston found that Cox had the following severe impairments: lumbar disc disease and sciatica. *Id*. at 21. ALJ Alston also found that these impairments, alone or in combination, did not meet or equal a Listing impairment. *Id.* at 23. ALJ Alston then determined that Cox had the residual functional capacity ("RFC") to perform light work with the following limitations: she is limited to occasional pulling and pushing with right lower extremity; she can occasionally climb ramps and stairs; she can occasionally balance, crouch, crawl, and kneel; and she can never climb ladders, ropes, or scaffolds. *Id*. ALJ Alston also concluded that Cox was capable of performing her past work as a shift manager and as a short-order cook. *Id*. at 28. Alternatively, ALJ Alston also found that considering her age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that she was capable of performing. *Id*. at 28–29. These include cashier (parking lot), investigator (dealer/accounts), and lamination inspector. *Id*. at 29. Thus, ALJ Alston found that Cox was not disabled. *Id*.

After unsuccessfully seeking review by the Appeals Council, Cox commenced this action by filing a complaint pursuant to 42 U.S.C. § 405(g) on August 24, 2015. D.E. 6.

---

[1] The court has referred this matter to the undersigned for entry of a Memorandum and Recommendation. 28 U.S.C. § 636(b).

## II. Analysis

### A. Standard for Review of the Acting Commissioner's Final Decision

When a social security claimant appeals a final decision of the Commissioner, the district court's review is limited to the determination of whether, based on the entire administrative record, there is substantial evidence to support the Commissioner's findings. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence is defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). If the Commissioner's decision is supported by such evidence, it must be affirmed. *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996).

### B. Standard for Evaluating Disability

In making a disability determination, the ALJ engages in a five-step evaluation process. 20 C.F.R. § 404.1520; *see Johnson v. Barnhart*, 434 F.3d 650 (4th Cir. 2005). The analysis requires the ALJ to consider the following enumerated factors sequentially. At step one, if the claimant is currently engaged in substantial gainful activity, the claim is denied. At step two, the claim is denied if the claimant does not have a severe impairment or combination of impairments significantly limiting him or her from performing basic work activities. At step three, the claimant's impairment is compared to those in the Listing of Impairments. *See* 20 C.F.R. Part 404, Subpart P, App. 1. If the impairment is listed in the Listing of Impairments or if it is equivalent to a listed impairment, disability is conclusively presumed. However, if the claimant's impairment does not meet or equal a listed impairment, the ALJ assesses the claimant's RFC to determine, at step four, whether he can perform his past work despite his impairments. If the claimant cannot perform past relevant work, the analysis moves on to step five: establishing

whether the claimant, based on his age, work experience, and RFC can perform other substantial gainful work. The burden of proof is on the claimant for the first four steps of this inquiry, but shifts to the Commissioner at the fifth step. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995).

### C. Medical Background

Cox has a history of back pain, anxiety, and depression. Her back pain dates back to 2007. Tr. at 286. Since that time, Cox has sought treatment for this condition. *Id*. at 270–75. In May 2009, an examination showed tenderness with some spasms as well as pain with flexation and extension. *Id*. at 272–73. Cox also displayed a negative straight leg raise, full strength, normal reflexes, and a normal gait. *Id*. Providers diagnosed her with low back pain and provided Cox a corticosteroid injection and steroid medication. *Id*. at 269, 273.

Cox began treatment with primary care physician Dr. Douglas Watford in July 2009. *Id*. at 295. Dr. Watford prescribed Vicodin as well as other pain medication and muscle relaxants. *Id*. at 290, 294, 295–97.

Cox had arthroscopic knee surgery in August 2009. *Id*. at 269. Although she had swelling several days after the surgery, her provider expected normal healing with time. *Id*.

A July 14, 2010 MRI of her lumbar spine showed degenerative disc disease at multiple levels. The MRI noted that the right L5-S1 nerve root impingement could be implicated. *Id*. at 328. *Id*. Neurologist Dr. Rukmini Menon examined Cox in June 2010 and July 2010. *Id*. at 318–41. The exam showed normal muscle strength, sensation, and reflexes, but also evidenced some pain with the right straight leg raise and an antalgic gait. *Id*. at 324, 340. Dr. Menon prescribed medication and referred Cox for physical therapy. *Id*. at 319–25. She also assessed a lifting restriction of five pounds. *Id*.

4

Dr. Watford continued to prescribe pain medication to Cox throughout 2010. *Id.* at 290–92, 294, 298–99. He also prescribed other medications for insomnia, depression, and anxiety. *Id.* at 294, 296, 299.

In January 2011, Cox had surgery to repair two hernias and to have a gallstone removed laparoscopically. *Id.* at 308, 310–15. Her surgeon cleared her to resume full activities in February 2011. *Id.* at 311.

Dr. Maqsood Ahmed saw Cox for a consultative examination in January 2012. *Id.* at 285–89. Cox reported a history of back pain. *Id.* at 286. She stated that this pain radiated into her legs and that it was aggravated by lifting or by prolonged sitting or standing. *Id.* Cox also reported a history of asthma with a chronic cough and that she smoked one and one-half packs of cigarettes per day. *Id.* at 286–87. An examination revealed that Cox had full range of motion of her extremities but painful range of motion in the thoracolumbar region. *Id.* at 285, 288. She had some tenderness on palpitation, normal muscle strength and reflexes, and negative straight leg raises. *Id.* at 288. Dr. Ahmed assessed chronic back pain with radicular symptoms, for which he recommended epidural injection. *Id.* He opined that Cox did not require surgery. *Id.* Dr. Ahmed further opined that Cox could sit, stand, walk, and use her hands without difficulty. *Id.* at 289.

Cox saw Dr. Watford later that month. *Id.* at 293. She complained of back pain, for which he prescribed Vicodin, but she also noted that she was able to do normal activities. *Id.* Cox continued to treat with Dr. Watford through 2012 and 2013. *Id.* at 344–51, 358. Dr. Watford prescribed pain medications, although he often did not note clinical findings upon examination. *Id.*

State agency medical consultants Drs. Perry Caviness and Jack Drummond opined that Cox was capable of a reduced range of light work. *Id.* at 91–92, 102–04, 117–18, 128–29. Both

5

reviewers found that Cox would be limited in her ability to push and pull with the right lower extremity, could frequently stoop, kneel, and crawl, and could occasionally balance, climb, and crouch. *Id*.

### D. Mental impairments

Cox contends that ALJ Alston failed to account for her mild limitations in concentration, persistence, or pace when formulating the RFC. The Commissioner argues that ALJ Alston found that Cox had only mild limitations in this functional area. Because ALJ Alston found that Cox did not have a severe mental impairment, Cox's depression and anxiety posed no more than a minimal impact on her ability to perform work-related activities. The Commissioner maintains, therefore, that a mild limitation in concentration, persistence, or pace did not require any mental restriction be included in the RFC. The court finds that an ALJ must explain how a limitation in the functional areas of Paragraph B is reflected in the RFC determination.

As noted above, ALJ Alston found, at step two, that Cox had severe impairments of lumbar disc disease and sciatica. Tr. at 21. ALJ Alston also noted that while Cox had other medically-determinable impairments, including depression and anxiety, these conditions were not severe impairments. *Id*. She found that Cox's non-severe conditions were either controlled with treatment or that they did not pose any significant limitation on Cox's ability to do basic work activities. *Id*. at 21–22. In evaluating Cox's mental impairments under the Paragraph B criteria, ALJ Alston found that her anxiety and depression caused only mild limitations in Cox's activities of daily living, her social functioning, and her ability to maintain concentration, persistence, or pace. *Id*. at 22. ALJ Alston also found that Cox had "no episodes of decompensation, each of extended duration." *Id*.

Cox submits that ALJ Alston failed to account for these mild limitations in formulating the RFC and in questioning the Vocational Examiner ("VE"). In support of her argument, Cox cites to *Mascio v. Colvin*, where the Fourth Circuit held it is reversible error for an ALJ to present RFC findings to a VE in the form of a hypothetical if the ALJ "fail[s] to account for a relevant factor when determining [the plaintiff's RFC]." 780 F.3d 632, 638 (4th Cir. 2015). The Fourth Circuit "agree[d] with other circuits that an ALJ does not account for a claimant's limitation in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work" because "the ability to perform simple tasks differs from the ability to stay on task." *Id.* (quotation omitted). In so holding, the Fourth Circuit emphasized that "[o]nly the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." *Id.* Because the ALJ failed to explain why the plaintiff's "moderate limitation in concentration, persistence, or pace at step three does not translate into a limitation in [plaintiff's] residual functional capacity," the Fourth Circuit remanded the *Mascio* case. *Id.*

In the present case, the Commissioner asserts that *Mascio* is distinguishable not only because it dealt with moderate limitations, as opposed to the mild limitations found presently, but also because *Mascio* had a severe mental impairment at step two, which is not present in this case. Because ALJ Alston found that Cox's depression and anxiety were non-severe impairments which had no significant effect on her ability to perform basic work activity, the Commissioner maintains that she was not required to translate any mild limitations stemming from these conditions at subsequent steps of the sequential evaluation. However, other courts in this circuit have concluded that an ALJ must account for a claimant's mild limitations in the functional areas of activities of daily living, social functioning, and maintaining concentration, persistence, or pace, even if the claimant's mental impairments are not severe. *See Brooks v. Colvin*, No. 1:15-

cv-191, 2016 WL 1465966, at *5–6 (W.D.N.C. Apr. 14, 2016) (remanding case where ALJ found claimant mildly limited in concentration, persistence, or pace but failed to assign any mental limitations nor explain why no limitations were included in RFC); *Reinhardt v. Colvin*, No. 3:14-cv-488, 2015 WL 1756480, at *3 (W.D.N.C. Apr. 17, 2015) ("While the court agrees with the Commissioner's argument that the fact that the ALJ found mild limitations in the paragraph B criteria does not necessarily translate to a work-related functional limitation, *Mascio* clearly imposes on the Commissioner a duty to explain why such mild mental health impairments found at step two do not translate into work-related limitations when plaintiff's RFC for work is considered.").

Given that the court is left to guess how Cox's mental impairments, though mild in their effect on her functioning in the Paragraph B areas, impact her work-related functions as determined in the RFC, meaningful review of the RFC determination is not possible. Accordingly, remand on this issue is appropriate. *See Scruggs v. Colvin*, No. 3:14–cv–00466, 2015 WL 2250890, at *5 (W.D.N.C. May 13, 2015) (noting that although the ALJ's findings at step two and three may not require an RFC that imposes any additional limitations for social functioning, the ALJ must at least provide a sufficient explanation in the decision to allow this Court to conduct meaningful review of the RFC determination).

### E.   Credibility

Cox next asserts that ALJ Alston inappropriately applied boilerplate language in making her credibility finding. She contends that ALJ Alston failed to identify which of Cox's statements were not credible and the specific reasons for her finding. The Commissioner contends, and the court agrees, that ALJ Alston properly supported her credibility finding.

8

The Social Security Regulations provide the authoritative standard for the evaluating subjective complaints of pain and symptomology. *See Craig v. Chater,* 76 F.3d 585, 593 (4th Cir. 1996); 20 C.F.R. § 404.1529(a). Under the Regulations, "the determination of whether a person is disabled by pain or other symptoms is a two-step process." *Id.* at 594. First, as an objective matter, the ALJ must determine whether the claimant has a medical impairment which could reasonably be expected to produce the pain or other symptoms alleged. *Id.*; *see also* SSR 96–7p, 1996 WL 374186, at *2 (July 2, 1996). If this threshold question is satisfied, then the ALJ evaluates the actual intensity and persistence of the pain or other symptoms, and the extent to which each affects a claimant's ability to work. *Id.* at 595. The step two inquiry considers "all available evidence," including objective medical evidence (i.e., medical signs and laboratory findings), medical history, a claimant's daily activities, the location, duration, frequency and intensity of symptoms, precipitating and aggravating factors, type, dosage, effectiveness and adverse side effects of any pain medication, treatment, other than medication, for relief of pain or other symptoms and functional restrictions. *Id.*; *see also* 20 C.F.R. § 404.1529(c)(3); SSR 96–7p, 1996 WL 374186, at *3. The ALJ may not discredit a claimant solely because his subjective complaints are not substantiated by objective medical evidence. *See id.* at 595–96. However, neither is the ALJ obligated to accept the claimant's statements at face value; rather, the ALJ "must make a finding on the credibility of the individual's statements based on a consideration of the entire case record." SSR 96–7p, 1996 WL 374186, at *2.

Here, ALJ Alston employed boilerplate language when assessing Cox's credibility. She stated:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision.

Tr. at 26. Cox submits that this language fails to either identify the statements found to be non-credible or to explain the reasons supporting such a finding. Thus, the court must determine whether ALJ Alston improperly used boilerplate language and, of so, whether it warrants remand.

The Fourth Circuit has found that boilerplate language may improperly imply "that ability to work is determined first and is then used to determine the claimant's credibility." *Mascio v. Colvin*, 780 F.3d at 639 (quoting *Bjornson v. Astrue*, 671 F.3d 640, 645 (7th Cir. 2012)). To "properly analyze[] credibility," the ALJ must "explain how he decided which of [claimant's] statements to believe and which to discredit." *Mascio*, 780 F.3d at 639–40.

The boilerplate language that the Fourth Circuit has criticized is not the same language used in ALJ Alston's decision. *See Mascio*, 780 F.3d at 639–40. Other courts within this circuit have upheld similar language. See *Linares v. Colvin, No.* 2015 WL 4389533, at *6 (W.D.N.C. July 17, 2015) (finding language did not constitute "meaningless boilerplate" because it did not suggest that the ALJ first assessed claimant's RFC and used that assessment to determine credibility).

Moreover, the Fourth Circuit stated that the use of boilerplate language would be harmless where the ALJ properly analyzed the claimant's credibility elsewhere in the decision. *Mascio*, 780 F.3d at 639. Here, ALJ Alston properly analyzed Cox's credibility and sufficiently supported her credibility determination. ALJ Alston noted that Cox submitted little objective evidence to support her claims of disability. *Id.* at 27. Although she reported a long history of

back pain, there was little objective evidence and few treatment records supporting the severity she alleged. *Id*. ALJ Alston noted that her treatment was sporadic and conservative. *Id*. While she may suffer pain and functional limitation, ALJ Alston found that the record lacked evidence showing Cox is so limited so as to preclude any gainful work activity. *Id.*

ALJ Alston's decision remarks that treatment notes from Dr. Watford between July 2009 and October 2013 showed generalized and conservative treatment, that her conditions were treated symptomatically, and that she was advised to follow-up only as needed. *Id*. at 24. Treatment records recorded generally normal findings upon examination, including normal range of motion and normal strength. *Id*. at 272–73, 285, 288, 324, 340, 344–51, 358. ALJ Alston observed that the record failed to indicate significant findings by Dr. Watford that would warrant more specialized care. *Id*. at 24.

The July 2010 MRI showed hypertrophic L5-S1 facet spondylosis with foraminal and subarticular stenosis. *Id*. at 328. It also showed degenerative changes at L3-L4 and L4-L5. *Id.* The MRI noted the right L5-S1 nerve root impingement could be implicated. *Id*. However, Dr. Menon's contemporaneous examination notes showed normal touch, strength, bulk, and tone in the extremities; negative straight leg raise on the left with some pain on the right straight leg raise; normal reflexes; normal heel-toe walk; and normal gait. *Id*. at 25.

Additionally, ALJ Alston's decision notes that Cox maintained that back surgery was recommended and that a 2008 MRI showed a herniated disc, but the record contained no support for these assessments. *Id.* at 25. She further remarked that while Dr. Menon assessed a five pound lifting restriction, Cox admitted she did not adhere to this limitation. *Id.* One month after her cholecystectomy, her surgeon released her to resume full activity, without restriction. *Id.* Consultative examiner Dr. Ahmed opined that Cox had no limitations in her abilities to sit, stand,

walk, and use her hands without difficulty. *Id*. at 27. ALJ Alston also cited Cox's activities of daily living. Cox testified that she lives alone and is able to perform light household chores; Cox has her driver's license and can drive short distances; and she can walk 60 yards, stand for 8–10 minutes, and sit for about one hour. *Id*. at 24.

As the Commissioner points out, Cox does not identify which evidence she contends that ALJ Alston failed to consider. ALJ Alston analyzed Cox's credibility in a comprehensive fashion and supported her findings with citations to the evidence of record. Accordingly, the court cannot conclude that her use of boilerplate language warrants remand in this instance.

### F.     Medical Opinion Evidence

Finally, Cox contends that ALJ Alston failed to properly analyze and explain the weight afforded to the medical opinion evidence. She also challenges the fact that ALJ Alston gave significant weight to the opinions of state agency physicians Drs. Caviness and Drummond but failed to adopt all of the limitations set forth in their opinions. She further notes that ALJ Alston failed to discuss Dr. Menon's five pound lifting restriction. The Commissioner correctly argues that an ALJ is not required to adopt all of an assessor's conclusions when affording it great weight.

The ALJ must weigh and evaluate all medical opinions received, regardless of the source. 20 C.F.R. §§ 404.1527(c), 416.927(c). Generally, opinions of treating sources are given greater weight than opinions of non-treating sources, such as consultative examiners. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). While a treating source's opinion usually is afforded "great weight," the ALJ is not required to afford it "controlling weight." *Craig*, 76 F.3d at 589–90. "[I]f a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Id*. at 590. If the ALJ

12

determines a treating source's opinion should not be given controlling weight, then the ALJ must evaluate and weigh the opinion according to the following non-exclusive list: "(1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." *Johnson*, 434 F.3d at 654 (citing 20 C.F.R. § 404.1527). The ALJ must state the weight given to a treating source's medical opinion and provide specific reasons for the weight given to those opinions. SSR 96–2p, 1996 WL 374188, at *5 (July 2, 1996).

In considering the medical opinion evidence, ALJ Alston gave significant weight to the assessments of Drs. Caviness and Drummond. These state agency physicians found that Cox was capable of light work, which ALJ Alston noted was "generally consistent with the totality of record evidence." Tr. at 27. ALJ Alston discounted an environmental restriction noting that Cox reported a history of asthma but she used an inhaler only intermittently and she did not require emergency care or hospitalization for exacerbation of this condition. *Id*. In according significant weight to a medical opinion, an ALJ is not bound to accept or adopt all the imitations set forth therein must be adopted. *See Bennett v. Colvin,* No. 3:13-CV-01176, 2015 WL 153950, at *13 (M.D. Tenn. Jan. 12, 2015) (holding that ALJ who accords great weight to opinion not required to adopt that opinion wholesale); *Razey v. Colvin*, No. 14-23, 2014 WL 4792150, at *2 (W.D. Pa. Sept. 23, 2014) (ruling that ALJ not required to adopt a medical opinion wholesale); *Lambert–Newsome v. Astrue*, 2012 WL 2922717, at * 6 (S.D. Ill. July 17, 2012) (noting that merely because ALJ gave great weight to an opinion "does not mean he was required to adopt it wholesale"); *Irvin v. Astrue*, 2012 WL 870845, at * 2–3 (C.D. Cal. Mar. 14, 2012) (finding that, although ALJ gave great weight to medical source opinion, he did not err in implicitly rejecting

one limitation from that opinion); *Armentrout v. Astrue*, No. 3:10CV504, 2011 WL 4625931, at *7 (E.D. Va. June 2, 2011) ("While the ALJ assigned 'significant' probative weight to the opinion, the ALJ was not then required to adopt every limitation and incorporate them into the RFC analysis."), *adopted by* 2011 WL 4625912 (E.D. Va. Oct. 3, 2011). Accordingly, ALJ Alston did not err by declining to adopt the environmental restriction assessed by the state agency physicians.

Cox next challenges ALJ Alston's failure to include Dr. Menon's five pound lifting restriction in the RFC. ALJ Alston noted that Dr. Menon assessed this restriction but that Cox conceded she did not adhere to it. Tr. at 25. She testified that she continued to work for several months after the lifting restriction was assessed in a job where she regularly lifted boxes weighing up to 75 pounds. *Id.* at 43–44. Moreover, Dr. Menon assessed this restriction in July 2010, more than one year before Cox's alleged disability onset date in September 2011. Given her intervening work between the restriction being assessed and her alleged onset date, a time during which she acknowledged she did not adhere to the lifting restriction and, in fact, regularly lifted heavier items, Dr. Menon's lifting restriction offers little evidence of Cox's abilities. Consequently, ALJ Alston did not err by failing to incorporate the lifting restriction into the RFC determination.

Finally, Cox maintains that the RFC should have included a restriction on her ability to stoop. Drs. Caviness and Drummond concluded that Cox could frequently stoop, and Dr. Watford opined that Cox could never stoop. *Id.* at 92, 103,118, 129, 355. She submits that treatment records documenting her complaints of back pain support a stooping restriction.

As noted above, ALJ Alston is not bound to adopt all findings assessed in the state agency medical opinions to which she accorded great weight. Additionally, she adopted Dr.

14

Case 4:15-cv-00137-D   Document 22   Filed 07/19/16   Page 14 of 16

Watford's opinions as to Cox's postural restrictions to the extent they were supported by the evidence. *Id*. at 26. ALJ Alston noted, however, that the remainder of Dr. Watford's opinion deserved little weight, explaining that his excessive limitations were inconsistent with the objective evidence, including his treatment notes and Cox's testimony. *Id*.

Moreover, although some physicians found Cox's ability to stoop was reduced, ALJ Alston concluded that Cox was capable of performing her past relevant work as a shift manager and as a short-order cook. *Id*. at 28. The Selected Characteristics of Occupations ("SCO")[2] states that no stooping is required for these positions. *See* DICOT 187.167-106, 2016 WL 683304; DICOT 187.167.014, 2016 WL 671389; DICOT 313.374-014, 1991 WL 672717.[3] In this respect, therefore, Cox's argument is moot.

## III. Conclusion

For the forgoing reasons, the court recommends that the court grant Cox's Motion for Judgment on the Pleadings (D.E. 17), deny Colvin's Motion for Judgment on the Pleadings (D.E. 19), and remand the matter for further consideration.

Furthermore, the court directs that the Clerk of Court serve a copy of this Memorandum and Recommendation on each of the parties or, if represented, their counsel. Each party shall have until 14 days after service of the Memorandum and Recommendation on the party to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct his or her own review (that is, make a *de novo* determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject,

---

[2] The SCO, a companion publication to the U.S. Department of Labor's Dictionary of Occupational Titles ("DOT"), is intended to provide "more detailed occupational data than that contained in the [DOT]." Foreword to Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles, at v (1993).

[3] The VE identified two shift manager positions, one in a restaurant and one in a grocery store. Tr. at 70.

or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. § 636(b)(l); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C.

**If a party does not file written objections to the Memorandum and Recommendation by the foregoing deadline, the party will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, the party's failure to file written objections by the foregoing deadline will bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation.** *See Owen v. Collins*, **766 F.2d 841, 846-47 (4th Cir. 1985).**

Dated: July 19, 2016

*Robert T. Numbers II*
ROBERT T. NUMBERS, II
UNITED STATES MAGISTRATE JUDGE